UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
RAGHAVAN SATHIANATHAN,

         Plaintiff,

     -against-             04 Civ. 7122 (DAB)(FM)
                        <u>ADOPTION OF REPORT &</u>
                        <u>RECOMMENDATION WITH</u>
                        <u>MODIFICATIONS AND</u>
                        <u>FURTHER ORDER FROM THE</u>
                        <u>COURT</u>

SMITH BARNEY, INC., MORGAN STANLEY,
INC., BRESSLER, AMERY & ROSS LAW FIRM,
EDWARD TURAN, JEFFREY FRIEDMAN, THOMAS
MIERSWA, BRIAN AMERY, HUGO HILGENDORF
IV, GEORGE SULLIVAN, DAVID RESTAINO,
JAMES YELLEN, STEPHEN DIMODICA, MORGAN
STANLEY EMPLOYEE 'A', SAMUEL "SKIP"
KEESAL, ROBERT ERICSON AND MICHELE FRON,

         Defendants.
-------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     This matter is before the Court upon the February 24, 2006
Report and Recommendation ("Report") of United States Magistrate
Judge Frank Maas.  The Report recommends that Plaintiff's First
Amended Complaint be dismissed in its entirety with no leave to
amend.  The Report further recommends that an anti-suit
injunction be ordered against Plaintiff.

     Pursuant to 28 U.S.C. § 636(b)(1)(C), "[w]ithin ten days
after being served with a copy, any party may serve and file
written objections to such proposed findings and
recommendations."  28 U.S.C. § 636(b)(1)(C); <u>see</u> <u>also</u> Fed. R.
Civ. P. Rule 72(b) (stating that "[w]ithin 10 days after being

served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations").  Where no timely objection has been made, "a district court need only satisfy itself there is no clear error on the face of the record." Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).  After conducting the appropriate level of review, the Court may then accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate.  28 U.S.C. § 636(b)(1)(C); see also Local Civil Rule 72.1(d).  For the reasons contained herein, the Report and Recommendation shall be ADOPTED as modified by the Court. See p. 21, infra.

Also before this Court are Plaintiff's Motion for a Stay, Plaintiff's Motion for Rule 11 Sanctions, and a Motion for Terminating Sanctions Against Plaintiff brought by Defendants Smith Barney, Edward Turan, Jeffrey Friedman, Thomas Mierswa, Keesal, Young & Logan, Samuel Keesal, Robert Ericson, and Michele Fron.  For the reasons contained herein, each of these Motions shall be DENIED.

2

## I. DISCUSSION

A.   <u>Plaintiff's Objections to the Report and Recommendation</u>

At the outset of his Objections, Plaintiff asserts that he "object[s] to all statements made by the Magistrate in his lengthy 79 page Magistrate's Report and Recommendation".  (Pl.'s Obj. at 2.)  Where a party only raises general objections, a district court need only review the Magistrate's Report for clear error.  <u>Brown v. Peters</u>, 1886 WL 5999355, 1997 U.S. Dist. LEXIS 14718, at *7 (N.D.N.Y. Sept. 22, 1997); <u>see also</u> <u>Nelson v. Smith</u>, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (where only general objections are filed to report and recommendation, a court need only review for clear error).  Indeed, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review . . . ."  <u>Vega v. Artuz</u>, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002).  Such objections "would reduce the magistrate's work to something akin to a meaningless dress rehearsal."  <u>Id.</u> (citations and internal quotations marks omitted).  <u>See also</u> <u>Kiggins v. Barnhart</u>, 2004 WL 1124169, at *1 (S.D.N.Y. May 20, 2004) (reviewing the report and recommendation for clear error where objections were essentially reiterations of arguments made in earlier submissions and

3

conclusory accusations).

After his generalized objection to all statements in the Magistrate's Report, Plaintiff sets forth numerous more specific objections, albeit objections that are difficult to isolate from one another. However, pro se plaintiffs merit more leniency under the pleading standards than do plaintiffs represented by counsel. Legal documents submitted by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173 (1980). The Court must "'interpret [pro se documents] to raise the strongest argument that [they] suggest[].'" Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Therefore, the Court will discern and address, to the extent that it is possible, Plaintiff's challenges to the Magistrate's Report in the order they appear in his Objections.

Objection No. 1. Plaintiff asserts that: "Even if there is no RICO conspiracy, there is the regular non-RICO civil conspiracy . . . ." (Pl.'s Obj. at 1-2.) With this statement, Plaintiff suggests that his non-RICO conspiracy claims were not given due consideration by the Magistrate. To the contrary, the Magistrate properly found that Plaintiff made no showing of any tort that could serve as the underlying act for the alleged

4

conspiracy.  (Report at 59-60.)  See Sokol v. Addison, 742

N.Y.S.2d 311, 312 (2d Dep't 2002) ("New York does not recognize

civil conspiracy to commit a tort as an independent cause of

action."); Hoag v. Chancellor, Inc., 677 N.Y.S.2d 531, 535 (1st

Dep't 1998) (allegations of conspiracy are permissible only when

they "connect a defendant to an otherwise actionable tort").

Plaintiff does not point to allegations that were before the

Magistrate which indicate that the Magistrate's finding was

improper, and therefore Plaintiff's first objection fails.

Objection No. 2.  Plaintiff asserts that he should be

granted leave to amend his causes of action against Defendant

Morgan Stanley because his First Amended Complaint "had not

focused on [his] claims against Morgan Stanley."  (Pl.'s Obj. at

3.)  The reason he gives for not having fully addressed his

claims against Defendant Morgan Stanley was that he filed this

action "to consolidate and toll [his] claims against new

individual-employee parties while [he] pursued appeals against

Smith Barney and [Bressler, Amery & Ross]."  (Id.)

Plaintiff incorrectly assumes that a complaint need not

notify the defendants of the complainant's grievances against

them.  To the contrary, "[t]he purpose of a complaint is to give

the defendant fair notice of the claim against him."  Griffin v.

Griffin, 327 U.S. 220, 250 (1946); see also Greenidge v. Allstate

5

Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006); In re Natural Gas
Commodity Litigation, 337 F. Supp. 2d 498, 508 (S.D.N.Y. 2004)
("[T]he purpose of a complaint is merely to fairly apprise
defendants of the claims they are summoned to contest.").  See
also Fed. R. Civ. P. 8(a) ("A pleading which sets forth a claim
for relief . . . shall contain . . . a short and plain statement
of the claim showing that the pleader is entitled to
relief . . . .").

    As the Magistrate correctly found, Plaintiff's Complaint did
not sufficiently apprise Defendant Morgan Stanley of his claims
against it.  Plaintiff's stated purpose for filing the First
Amended Complaint — that he sought to consolidate and toll his
claims against other parties, and not that he sought to assert a
sufficient claim against the Morgan Stanley defendants — is not a
sufficient basis for granting him leave to amend his Complaint.
Countenancing Plaintiff's justification would flout not only
judicial economy, but also the purposes of filing a complaint.
Accordingly, Plaintiff's second objection to the Report is
without merit.

    Objection No. 3.  Plaintiff contends that he should be
granted leave to amend the First Amended Complaint to include,
inter alia, a claim against Defendant Morgan Stanley for breach

6

of their agreement to tender him a $450,000 signing bonus.

(Pl.'s Obj. at 3.)  Plaintiff asserts:

> I have never been granted leave to amend the [First
> Amended Complaint] in order to add into this SDNY
> case my claims in my NASD-administered arbitration
> against Morgan Stanley after Morgan Stanley forced
> the suspension of the NASD administered arbitration
> against Morgan Stanley until the resolution of this
> SDNY case with the knowledge that my Morgan Stanley
> arbitration . . . would, as a result of the
> suspension in the arbitration, now be subject to
> res judicata and collateral estoppel from this SDNY
> case.

(Pl.'s Obj. at 3.)  But Plaintiff is the party who initiated the

NASD arbitration in the first instance.  (Report at 16.)  He

shall not be permitted to pursue duplicative proceedings for the

same claims.  See Woodlawn Cemetery v. Local 365, 930 F. 154, 156

(2d Cir. 1991) (recognizing "the burden and wastefulness of

duplicative proceedings").  Moreover, arbitrating these claims

comports with the strong judicial policy in favor of arbitration.

See Brener v. Becker-Paribas, 628 F. Supp. 442, 445-46 (S.D.N.Y.

1985) (arbitration is "designed to avoid the expense and delays

involved in litigation").  Accordingly, Plaintiff's third

objection to the Report fails.

Objection No. 4.  Plaintiff objects to the Magistrate's

determination that civil RICO claims require personal reliance

where the alleged predicate act or acts are mail or wire fraud.

(Pl.'s Obj. at 5.)  The only alleged acts of fraud for which

7

Plaintiff suggests the Magistrate made this improper determination are the alleged misrepresentations that Defendants made to Judge Armstrong in <u>Sathianathan v. Smith Barney, Inc.</u>, No. C 04-2130 (SBA) (N.D. Cal. Jun. 2, 2006) (<u>see</u> Pl.'s Obj. At 5), and Defendant Morgan Stanley's statements made in 2005 during the course of an NASD proceeding (<u>see</u> Pl.'s Obj. at 15).

To state a civil RICO claim where the underlying racketeering acts are fraud, Plaintiff must allege a pattern of at least two predicate acts of fraud within a ten-year period. 18 U.S.C. § 1961(5).  In rare cases, a pattern of fraud may be wielded against a single victim.  <u>State Wide Photocopy Corp. v. Total Financial Services, Inc.</u>, 909 F. Supp. 137, 140 (S.D.N.Y. 1995)  For a single-victim RICO claim to survive, however, a plaintiff must allege a pattern of separate economic injuries. <u>See</u> <u>State Wide Photocopy</u>, 909 F. Supp. at 140 (S.D.N.Y. 1995) (defendants who tried to lure multiple clients away from a single entity committed a pattern of racketeering activity, where each act of luring constituted a separate economic injury); <u>see also</u> <u>LaSalle Bank Lake View v. Seguban</u>, 937 F. Supp. 1309, 1321 (N.D. Ill. 1996) ("Courts may find a pattern where there is only a single victim and a single scheme where there are repeated economic injuries.").  <u>Cf.</u> <u>Jerome M. Sobel & Co. v. Fleck</u>, No. 03 Civ. 1041, 2003 WL 22839799, at * 12 (S.D.N.Y. Dec. 1, 2003),

adopted by 2004 WL 48877 (S.D.N.Y. Jan. 8, 2004) (Gorenstein, M.J.) ("[T]he lack of variety among the predicate acts, the presence of only one scheme with a narrow goal, the small number of participants and the presence of only one victim . . . far outweigh the duration of the fraudulent conduct."). The alleged acts of fraud committed against Plaintiff himself all relate to the same employment termination grievance against Defendants, and therefore cannot have resulted in separate economic injuries, nor can they suggest the variety of conduct that survivable RICO claims typically present.

Plaintiff also refers to predicate acts against other victims, contending that those acts create a pattern of racketeering activity. For example, Plaintiff suggests that the Mian case constitutes a second predicate act of fraud. However, the latest incident of alleged fraud in the Mian case occurred in April of 1994. (See First Am. Compl. at ¶ 665.) See generally Mian v. Donaldson, Lufkin, Jenrette Securities Corp., 1994 WL 494902 (S.D.N.Y. Sep 9, 1994). This predates the alleged misrepresentations made to Judge Armstrong and to the NASD arbitration panel by more than ten years, (see Compl. ¶ 162 (stating that Plaintiff initiated the California matter on May 28, 2004), and therefore does not sufficiently create a ten-year pattern of racketeering activity. Plaintiff also suggests that

two proceedings in Florida create a pattern of predicate acts of fraud, but he offers no specific allegations about those proceedings.  (<u>See</u> Report at 50-51.)

Because Plaintiff's civil RICO claims fail for these reasons, his objection to the Magistrate's finding on personal reliance is inapposite.  Accordingly, Plaintiff's fourth objection fails.

<u>Objection No. 5.</u>  As a corollary to the previous objection, Plaintiff objects to the Magistrate's denying him leave to amend his Complaint to allege the Florida cases with particularity. (Pl.'s Obj. at 6.)  Not only does Plaintiff fail to provide the Court with a proposed amended pleading, but his objections also lack any proposed allegations about predicate acts of fraud in Florida.  What is more, Plaintiff chose to file a voluminous First Amended Complaint and RICO Statement, yet included in them no adequate pleadings about the two Florida cases.  Accordingly, Plaintiff's fifth objection fails.

<u>Objection No. 6.</u>  Plaintiff objects to the Magistrate's conclusion that the <u>Mian</u> case, in light of its having been dismissed on the merits, is not evidence of Defendant Amery's knowing participation in a scheme to defraud.  (<u>See</u> Pl.'s Obj. at 6, <u>citing</u> Report at 50.)  Plaintiff contends that, despite the dismissal of <u>Mian</u>, <u>see Mian</u>, 1994 WL 494902, the underlying

predicate acts in the suit may still be considered predicate acts for the purposes of the instant lawsuit.  According to Plaintiff, the <u>Mian</u> suit was dismissed for failure to allege a racketeering pattern against more than one victim, not for failure to allege the predicate act of fraud.

While the summary decision at <u>Mian</u>, 1994 WL 494902, does not make clear whether the alleged racketeering predicate acts are the same acts dismissed elsewhere in the decision as separate causes of action, Plaintiff's objection nonetheless is not relevant.  As discussed <u>infra</u>, the facts of the <u>Mian</u> case predate the other predicate acts of fraud alleged by Plaintiff by more than ten years.  That alone is sufficient for dismissal of Plaintiff's RICO claims.  Accordingly, Plaintiff's sixth objection fails.

<u>Objection No. 7.</u>  Plaintiff objects to the Magistrate's having "restrict[ed] his assessment of the conspiracy cause of action to only the causes of action listed in the [First Amended Complaint]."  (Pl.'s Obj. at 7.)  Plaintiff appears to be suggesting that the law does not require him to set forth all the acts which Defendants allegedly conspired to commit.  But the law does require Plaintiff to set forth at least one such substantive act.  As the Magistrate correctly concluded, Plaintiff has not properly set forth even one substantive act that Defendants

11

conspired to commit.  See Lightning Lube, Inc. v. Witco Corp., 4
F.3d 1153, 1191 (3d Cir. 1993), quoted in Discon, Inc. v. NYNEX
Corp., 93 F.3d 1055, 1064 (2d Cir. 1996), rev'd on other grounds,
525 U.S. 128 (1998) ("[a]ny claim under § 1962(d) based on
conspiracy to violate the other subsections of section 1962
necessarily must fail if the substantive claims are themselves
deficient"); see also Hoag, 677 N.Y.S.2d at 535 (allegations of
conspiracy are permissible only when they "connect a defendant to
an otherwise actionable tort").  Accordingly, Plaintiff's seventh
objection fails.

Objection No. 8.  Plaintiff objects to the Magistrate's
recommendation to dismiss the legal malpractice claim.  Plaintiff
argues that he should be granted leave to amend this claim to
include more fully his allegations against Morgan Stanley.  (See
Pl.'s Obj. at 8 ("The fact that the [First Amended Complaint's]
legal malpractice cause of action does not mention Morgan Stanley
. . . is further proof that my [First Amended Complaint] had
focused on Smith Barney; Bressler, Amery & Ross; and Keesal,
Young & Logan . . .").)  As with his second objection, see
supra, at 4-5, Plaintiff incorrectly assumes that he should be
granted leave to amend his legal malpractice claim because his
decision not to focus on certain Defendants excuses the
insufficiency of his pleading.  Moreover, though Plaintiff

12

suggests that Morgan Stanley's In-House Counsel James Yellen committed legal malpractice against him, the Objections do not provide any specific allegations that could corroborate this accusation.  Accordingly, Plaintiff's eighth objections fails.

Objection No. 9.  According to Plaintiff, the Magistrate incorrectly applied the intra-corporate conspiracy doctrine to this case.  (Pl.'s Obj. at 8.)  However, the Magistrate was correct that "a corporation cannot conspire with its employees or attorneys".  (See Report at 52.)  See Stoner v. N.Y.C. Ballet Co., 2002 WL 523270, at *9 (S.D.N.Y. Apr. 8, 2002).  Even were the intra-corporate conspiracy doctrine not applicable to Plaintiff's case, the conspiracy claim must fail because there are no sufficient allegations that the Defendants committed any substantive illegal act.  Therefore, Plaintiff's ninth objection fails.

Objection No. 10.  Plaintiff objects to the Magistrate's determination that "because [Plaintiff] has failed to comply with the requirement [that parties submit copies of proposed pleadings], the Court is forced to assess the viability of his proposed amendments on the basis of the motion papers alone." (Report at 66.)  Plaintiff contends that the Magistrate should not have considered his request for leave to amend on the motion papers alone.  Not only did Plaintiff fail to furnish the

13

Magistrate with a copy of his proposed pleading while the present
papers were sub judice before him, but Plaintiff also has not
furnished this Court with a copy of the proposed pleading during
the time that the Report and Recommendation has been under its
consideration.  In any event, furnishing this Court with a
proposed pleading could not alter the reality that, for reasons
stated elsewhere in this Order, any proposed amendment would be
futile.  Plaintiff's tenth objection is without merit.

Objection No. 11.  Plaintiff's next objection states: "[A]s
a basis for denying me leave to amend, the Magistrate has
incorrectly considered the cost to Defendants of responding to an
amendment to the [First Amended Complaint]."  (Report at 27.)
Plaintiff misunderstands the Magistrate's analysis.  The
Magistrate did not consider the cost to Defendants when he
recommended that Plaintiff be denied leave to amend his Complaint
under Fed. R. Civ. P. 15(a).  Rather, the cost of litigation
figured into the Magistrate's decision not to require Plaintiff
pursuant to Fed. R. Civ. P. 8(a) to draft clearer allegations.
(See Report at 27.)  In other words, the Magistrate considered
costs when he determined that Plaintiff shall not be directed to
state his existing claims more succinctly, not when he determined
that Plaintiff shall be barred from adding entirely new claims.
Accordingly, Plaintiff's eleventh objection is inapposite.

14

Objection No. 12.  Plaintiff objects to the Magistrate's having considered matters outside the Complaint.  (Pl.'s Obj. at 10-11.)  However, on a Rule 12(b)(6) motion a court may consider the factual allegations in the complaint, documents attached to the complaint as exhibits or incorporated in it by reference, matters of which judicial notice may be taken, and documents either in a plaintiff's possession or of which a plaintiff had knowledge and relied on in bringing suit.  Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)).  Plaintiff writes that the Magistrate "relied extensively on the Defendants' twisted interpretation of" the other proceedings he has initiated against Defendants.  (Pl.'s Obj. at 11.)  Not only are courts authorized to consider documents from other judicial and quasi-judicial proceedings on a motion to dismiss, but Plaintiff also neglects in his Objections to cite any specific instances of the Magistrate's dispositive reliance on Defendants' interpretations of those proceedings. Plaintiff's twelfth objection fails.

Objection No. 13.  Plaintiff contends that the Report evinces the Magistrate's bias against him.  Specifically, Plaintiff directs the Court to the Report at 9-10, which reads:

> In or around February 2002, Morgan Stanley fired
> [Plaintiff].  The ostensible reasons for his
> termination were that he had placed an order for a
> customer who refused to pay and had not followed
> instructions regarding procedures required for
> large trades.  (See [First Amended Complaint] ¶
> 934, 936-37).  [Plaintiff] contends that these
> reasons were pretextual.  (Id.)

(Report at 9-10.)  Plaintiff argues that the Magistrate's failure

here to cite Paragraph 935 of the First Amended Complaint reveals

a bias.  Paragraph 935 reads: "Additionally, although in his

email, my Morgan Stanley Branch Manager Stephen DiModica had

claimed that he had warned me about doing large trades without

all the paperwork and the funds, this claim by Stephen DiModica

is absolutely not true."

Plaintiff apparently is arguing that the Magistrate should

have cited Paragraph 935 because it alleges that Defendants'

stated justification for terminating Plaintiff is false.

However, the Magistrate refers to Morgan Stanely's reason for

terminating him as an "ostensible" reason, thereby granting

Plaintiff whatever benefit Paragraph 935 might have given him.

Accordingly, Plaintiff's thirteenth objection is without merit.

Objection No. 14.  According to Plaintiff, the Magistrate

incorrectly concluded that the threat of financial loss is not a

form of coercion recognized by the law of extortion.  (Pl.'s Obj.

at 16-18.)  However, the Magistrate recommended the dismissal of

16

Plaintiff's extortion claim, not for that reason, but because Plaintiff's allegations "do not, by any stretch of the imagination, rise to the level of a criminal Hobbs Act violation." (Report at 45.)  The Magistrate's conclusion is correct.

The crime of extortion requires a showing that a defendant obtained another person's property with his consent, where the consent was brought about through the use or threatened use of force, violence or fear.  Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 400 (2003).  Defendants' reservation "'of the right to charge back current employees' the amount of adverse judgments or settlements and to take disciplinary action against them" does not, as Plaintiff would otherwise have the Court find, amount to "extortive coercive language".  (See Report at 44.) Moreover, Plaintiff does not explain how his "intangible right to honest services of lawyers" is property, nor does he allege how Defendants ostensibly "obtained" that property.  (See Pl.'s Obj. at 18.)  Cf. Scheidler, 537 U.S. at 403 (in finding that an action for extortion requires "not only the deprivation but also the acquisition of property", the Supreme Court ruled that Defendants did not "obtain" property per se when they used force to shut down health clinics nationwide).

17

Finally, Plaintiff's extortion-related claims are not enumerated in his Complaint.  They appear for the first time in his RICO Statement.  Accordingly, Plaintiff's fourteenth objection is without merit.

Objection No. 15.  Plaintiff generally objects to the Magistrate's understanding of his case, calling it "superficial and incorrect."  (Pl.'s Obj. 18-20.)  As an example, Plaintiff argues that the Magistrate's chronology of events in the Complaint is out of order.  What Plaintiff does not make clear is, even were he correct about the Magistrate's having misrepresented Plaintiff's time line, how a different chronology would impact the disposition of the case.  Accordingly, Plaintiff's fifteenth objection is without merit.

Objection No. 16.  Plaintiff objects to the Magistrate's conclusion that Plaintiff "is no longer permitted to work as a stockbroker, not because of anything that Smith Barney or Morgan Stanley did to him, but because the NASD found that he had engaged in serious misconduct which he refused to acknowledge." (Pl.'s Obj. at 20 (emphasis supplied).)  Plaintiff goes on to address the alleged unfairness of the NASD arbitration: "[T]he NASD's double bar on me for unsuitable recommendations to two clients is the toughest NASD decision on record based on a review of all NASD decisions on the internet."  (Id.)

18

Plaintiff apparently is asking this Court to re-visit the NASD panel's allegedly over-harsh penalty issued against him. Not only is a rehashing of an arbitration proceeding improper when such proceeding is not being directly challenged, but it also runs afoul of the judiciary's strong policy in favor of arbitration.  See Brener, 628 F. Supp. at 445-46 (S.D.N.Y. 1985). Plaintiff does not make clear how the NASD's ruling was harsher than previous NASD findings, why such allegedly excessive harshness is improper, and how this alleged harshness impacts the present lawsuit.  Plaintiff's sixteenth objection is without merit.

Objection No. 17.  Plaintiff objects to the Magistrate's recommendation for sanctions, contending that Defendants did not comply with the safe harbor provision in Fed. R. Civ. P. 11. That federal rule provides:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection (b) [of Fed. R. Civ. P. 11].  It shall be served as provided in [Fed R. Civ. P. 5], but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed. R. Civ. P. 11(c)(1)(A).  Even if Defendants did not adhere to the safe harbor requirements of this rule, Plaintiff overlooks

the fact that Rule 11 sanctions also may be issued on the Court's own initiative: "On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) [of Fed. R. Civ. P. 11] and directing an attorney, law firm, or party to show cause why it has not violated (b) with respect thereto."  Fed. R. Civ. P. 11(c)(1)(B). Indeed, the Supreme Court has held that lower federal courts have inherent authority to impose sanctions to insure that the judicial process is not abused by litigants.  Chambers v. NASCO, Inc., 501 U.S. 32, 43-45 (1991).

The Magistrate's Report sufficiently notified Plaintiff that he was facing possible Rule 11 sanctions, and that he shall show cause why such sanctions should not be issued against him. Plaintiff has failed to show cause in his Objections or elsewhere why the Magistrate's recommended anti-suit injunction is improper.  In fact, the volume and futility of his Objections (before and after revising them), as well as his continuing and vexatious motion practice, have served only to show further cause why an anti-suit injunction ought to be entered.  Accordingly, Plaintiff's "safe harbor" objection to the recommendation for Rule 11 sanctions, while factually correct, does not alter the Court's decision to impose the recommended sanctions.

The Magistrate's recommended sanction, and reasons therefor,

20

are adopted as modified.   (See Report at 75-76.)   This Court

removes the reference to 28 U.S.C. § 372(c), so that the anti-

suit injunction is as follows:

> (1) Sathianathan shall be and hereby is permanently enjoined and restrained from filing or serving any new action or proceeding in any federal court or tribunal against any of the Defendants named in this action, or their officers, agents, or employees, or the NASD, arising out of, or which relates to, the Venkatramani or Sathianathan Claims or any of the prior proceedings between or among, Sathianathan, the Smith Barney Defendants, the Morgan Stanley Defendants, the Bressler Defendants, or the KYL Defendants, and (except as noted below) from proceeding further in any manner whatsoever with the prosecution of this action;

> (2) Sathianathan shall be and hereby is permanently enjoined and restrained from commencing any further action or proceeding in any state court against any of the Defendants named in this action, or their officers, agents, or employees, or the NASD, arising out of or which relates to the Venkatramani or Sathianathan Claims or any of the prior proceedings between or among, Sathianathan, the Smith Barney Defendants, the Morgan Stanley Defendants, the Bressler Defendants, or the KYL Defendants, unless he has first complied with the procedures outlined in Martin-Trigona, 737 F.2d at 1258 n.3, for obtaining leave from said court; and

> (3) nothing in this anti-suit injunction or any order of this Court shall be construed as denying Sathianathan the right to seek direct review of any decisions or orders rendered in this or any previously-filed action or proceeding, or to file papers responding to any papers or applications made by any adverse party in this or any previously-filed action or proceeding.

21

Having reviewed the objected-to portions of the Report de novo and having reviewed the remainder of the Report for clear error, the Court hereby APPROVES, ADOPTS, and RATIFIES Magistrate Judge Frank Maas' Report and Recommendation as modified by this Court.

B.    Plaintiff's Motion for Stay

Plaintiff also moves the Court to stay this action until after United States District Judge Saundra Brown Armstrong issues a final ruling on Plaintiff's Rule 60 Motion for Relief from her February 25, 2005 Order, and until after the New Jersey Appellate Court issues its ruling on Plaintiff's appeal of the lawsuit against Defendants Brian Amery and Bressler, Amery & Ross.

Plaintiff's Motion is now moot.  The New Jersey action was resolved by the Appellate Division of the Superior Court of New Jersey on June 21, 2006.  Sathianathan v. Amery, No. A-4905-03T1 (N.J. App. Div. Jun. 21, 2006).  Plaintiff's Motion for Reconsideration in the Northern District of California also has been decided.  Sathianathan v. Smith Barney, Inc., No. C 04-2130 (SBA) (N.D. Cal. Jun. 2, 2006).

To be sure, Judge Armstrong denied Plaintiff's Rule 60 Motion without prejudice, and granted Plaintiff leave to re-file his Motion because, according to Judge Armstrong, "[i]t is

undisputed that Defendant [Smith Barney, Inc.] made misrepresentations to the Court", and that "the Court relied on those misrepresentations in its February 25, 2005 Order." Sathianathan v. Smith Barney, Inc., No. C 04-2130 (SBA) (N.D. Ca. Jun. 2, 2006). But even if Judge Armstrong ultimately found in favor of Plaintiff in that case, the outcome of the matter before this Court would not change. As stated supra, any allegedly fraudulent misrepresentations made to Judge Armstrong do not fit within the ten-year time frame required under RICO. Moreover, even were the timing requirement satisfied, Plaintiff's case in New York cannot hinge on one alleged incident of fraud in California. Bringing suit in New York for an incident that allegedly took place during a judicial proceeding in a California federal court constitutes an improper choice of venue and an improper collateral attack.

Accordingly, Plaintiff's Motion for a Stay is hereby DENIED.

C.   Defendants' Motion for Terminating Sanctions

Defendants Smith Barney, Edward Turan, Jeffrey Friedman, Thomas Mierswa, Keesal, Young & Logan, Samuel Keesal, Jr., Robert Ericson, and Michele Fron have moved this Court for terminating sanctions against Plaintiff. Because this Memorandum provides a dispositive resolution of Plaintiff's claims, thereby closing the

docket for the case, their Motion is hereby DENIED as moot.

D.    <u>Plaintiff's Motion for Rule 11 Sanctions</u>

Plaintiff moves this Court to issue Rule 11 sanctions against those Defendants who sought terminating sanctions. According to Plaintiff, that Motion had an "improper, harassing purpose". (Pl.'s Mot. for Rule 11 Sanctions at 5.)

Plaintiff concedes that he contacted an employee of Defendant Keesal, Young & Logan in the course of this litigation. Those communications were harassing and unethical, and were the reason for Defendants' Motion. The Motion for Terminating Sanctions, while denied as moot, was not so vexatious as to warrant issuing Rule 11 Sanctions against the Defendants who filed it. Defendants' exasperation with Plaintiff's litigation tactics is understandable.

Accordingly, Plaintiff's Motion for Rule 11 Sanctions is hereby DENIED.


II. CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED that the Report and Recommendation of United States Magistrate Judge Frank Maas, dated July 19, 2005, is APPROVED, ADOPTED and RATIFIED by the Court as modified. Accordingly, Plaintiff's First Amended

24

Complaint is hereby DISMISSED.

Plaintiff's Motion for a Stay and Defendant's Motion for Terminating Sanctions are DENIED as moot.

Plaintiff's Motion for Rule 11 Sanctions is DENIED.

The Clerk of Court is directed to CLOSE the docket for this case.


SO ORDERED.


Dated:    New York, New York
          February 21, 2007

                                    DEBORAH A. BATTS
                                    United States District Judge

25